IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

SOUTHERN FARM BUREAU
LIFE INSURANCE COMPANY,

    Plaintiff,

v.                                                             Civil Action No. 3:23-cv-00047

EMILY H. FITZGERALD,

THOMAS H. FITZGERALD, JR.,

and

LYDIA ANNE FITZGERALD, as Administrator
of the Estate of Thomas Henry Fitzgerald, III,

    Defendants.

## COMPLAINT

Plaintiff, Southern Farm Bureau Life Insurance Company ("Southern Farm Bureau"), by counsel, pursuant to Fed. R. Civ. P. 22, for its Complaint for interpleader against Defendants Emily H. Fitzgerald ("Emily Fitzgerald"), Thomas H. Fitzgerald, Jr. ("Thomas Fitzgerald"), and Lydia Anne Fitzgerald, as Administrator of the Estate of Thomas Henry Fitzgerald, III ("Lydia Fitzgerald"), states as follows:

### Jurisdiction and Venue

1.    This action seeks to interplead certain life insurance benefits payable as a result of the death of Thomas Henry Fitzgerald, III (the "Insured") under a whole life policy, policy no. 01 1983309 (the "Whole Life Policy") and a term life policy, policy no. 011591302L (the "Term Life Policy") that Southern Farm Bureau issued to the Insured (collectively, the "Policies").

2. Southern Farm Bureau was incorporated under the laws of Mississippi and has its principal place of business in the State of Mississippi. As a result, for the purposes of 28 U.S.C. § 1332(c)(1), Southern Farm Bureau is deemed to be a citizen of the State of Mississippi.

3. Defendants Emily Fitzgerald, Thomas Fitzgerald and Lydia Fitzgerald reside in and are citizens of the Commonwealth of Virginia. Further, Lydia Fitzgerald qualified as Administrator of the Estate of Thomas Henry Fitzgerald, III, (the "Estate") in a Virginia court and the Insured was a citizen of Virginia at the time of his death.

4. The life insurance benefits in controversy in this action consist of $32,974.87, exclusive of applicable interest, under the Whole Life Policy, and $250,000.00, exclusive of applicable interest, under the Term Life Policy.

5. Since this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, this Court has jurisdiction under 28 U.S.C. § 1332.

6. Alternatively, since the matter in controversy under the Term Life Policy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, this Court has jurisdiction over that interpleader claim under 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the interpleader claim involving the Whole Life Policy because it forms part of the same case or controversy under Article III of the United States Constitution and derives from a common nucleus of operative facts with the interpleader claim involving the Term Life Policy; *i.e.*, (a) the effect, if any, of certain divorce property settlement agreements and the divorce decrees relating to the Insured and Emily Fitzgerald on the payment of life insurance benefits under the Policies, both of which

Southern Farm Bureau issued to the Insured and on which Emily Fitzgerald is listed the Primary Beneficiary; and (b) whether the Policies were part of (1) a plan, fund or program, (2) established or maintained, (3) by an employer, (4) for the purpose of providing, through the purchase of insurance or otherwise, benefits in the event of death, (5) to participants or their beneficiaries, so that they might be governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

7. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the interpleader claim occurred in Nelson County, Virginia, which is in this judicial district. Alternatively, all of the Defendants reside in this judicial district. Venue is proper in the Charlottesville Division of this Court under Local Rule 2(a)(3) because it includes Nelson County, Virginia.

## Statement of the Case

8. In August of 1991, the Insured and Emily Fitzgerald married, and they subsequently lived together in Nelson County, Virginia.

### The Whole Life Policy

9. In November of 1991, while living in Nelson County, the Insured applied for the Whole Life Policy, naming in his application Emily Fitzgerald as the Primary Beneficiary. He did not name a Contingent Beneficiary in the application, and he reserved the right to change the beneficiary. The application provided that the Insured was to be the Owner of the policy.

10. Southern Farm Bureau issued the Whole Life Policy to the Insured insuring his life, with date of issue of November 21, 1991, and a benefit amount of $25,000. The Whole Life Policy provided that the Primary and Contingent Beneficiary were as named in the application, unless changed by the Owner. The Whole Life Policy provided that the Owner was as named in

3

the application.

11. The Whole Life Policy provided that the "policy proceeds will be paid in equal shares to the surviving Beneficiaries, unless otherwise provided." The Whole Life Policy also provided that "[p]ayments will be made successively in the following order: (a) the Primary Beneficiary, if any; otherwise (b) the Contingent Beneficiary, if any; otherwise (c) the Owner, or the estate of the Owner."

12. Initially, payments of annual premiums were made on the Whole Life Policy by checks apparently drawn on account(s) in the name of the Insured and Emily Fitzgerald; Fitzgerald Farms, T. Henry or Emily V. Fitzgerald, III; and/or Emily V. Fitzgerald.

<u>The Divorce Between the Insured and Emily Fitzgerald</u>

13. The Insured and Emily Fitzgerald entered into a Property Settlement and Separation Agreement dated August 15, 2007 (the "Property Settlement Agreement").

14. Property Settlement Agreement included certain estate in which the Insured and Emily Fitzgerald had interests as tenants by the entirety, with the parties agreeing that the Insured would make mortgage payments on one such tract of land.

15. The Property Settlement Agreement provided, in part:

**LIFE INSURANCE**

Life insurance coverage with insurance policies are set forth in the policies

4

enumerated below:

| Life Insured | Type Policy | Policy Owner | Named Beneficiary | Cash Surrender Value |
|---|---|---|---|---|
| Husband | Whole | Husband/So.Farm Bureau | Wife | $2,375.00-$25,000.00 at death |
| Husband | Term | MMA | Wife | $200,000.00 at death |

If either party has obtained a loan or advance against any of the above listed policies, that loan or advancement shall be repaid by that party prior to cashing in the same.

16. On November 5, 2007, the Nelson County Circuit Court entered a Final Decree, divorcing the Insured and Emily Fitzgerald from the bonds of matrimony, a vinculo matrimonii (the "Final Decree of Divorce"). The Final Decree of Divorce affirmed, ratified, and incorporated the Property Settlement Agreement. The Final Decree of Divorce made no mention of life insurance.

## The Term Life Policy

17. In 2011, while living in Nelson County, the Insured applied for the Term Life Policy, naming in his application Emily Fitzgerald, whom he identified as his "wife," as the Primary Beneficiary, and Thomas Fitzgerald, whom he identified as his father, as Contingent Beneficiary, and he reserved the right to change the beneficiary. The application provided that the Insured was to be the Owner of the policy.

18. Southern Farm Bureau issued the Term Life Policy to the Insured insuring his life, with date of issue of May 21, 2011, and a benefit amount of $250,000. The Term Life Policy provided that the Primary and Contingent Beneficiaries were as named in the application, unless changed by the Owner. The Term Life Policy provided that the Owner was as named in the application.

19. The Term Life Policy provided that the "policy proceeds will be paid in equal

5

shares to the surviving Beneficiaries, unless otherwise provided." The Term Life Policy also provided that "[p]ayments will be made successively in the following order: (a) the Primary Beneficiary or Beneficiaries, if any; otherwise (b) the Contingent Beneficiary or Beneficiaries, if any; otherwise (c) the Owner or Owners, or the estate of the last surviving Owner."

20. The first premium payment on the Term Life Policy in 2011 was made by check on an account apparently in the name of Fitzgerald Farms, LLC, T. Henry or Emily V. Fitzgerald, III. All subsequent, annual premium payments on the Term Life Policy were made by checks on an account apparently in the name of Fitzgerald Farms, LLC.

21. Starting in 2011, all annual premium payments on the Whole Life Policy were made by checks on an account apparently in the name of Fitzgerald Farms, LLC.

22. On information and belief, Fitzgerald Farms LLC is a limited liability company whose original articles of organization were filed with the Virginia State Corporation in 2009, and it operates a farm in Nelson County.

The Amended Property Settlement Agreement
and the Amended Final Decree of Divorce

23. The Insured and Emily Fitzgerald entered into an Amended Property Settlement and Separation Agreement dated October 29, 2013 (the "Amended Property Settlement Agreement"), in which they agreed "that all matters concerning real property owned by them or either having an interest in, has [sic] been settled between them, and settles all issues of real property." Further, they agreed that "[a]ll the farm equipment, animals, and/or crops are the property of the [Insured] and [Emily Fitzgerald] waives all interest to the [Insured] and claims no further interest or claim to any farm equipment, animals, or crops."

24. On November 4, 2013, the Nelson County Circuit Court entered an Amended Final Decree that affirmed, ratified, and incorporated the Amended Property Settlement

Agreement (the "Amended Final Decree of Divorce"). The Amended Final Decree of Divorce also provided that "all other terms" of the Final Decree of Divorce "shall remain in full force and effect."

<u>The Insured's Death and this Interpleader</u>

25. The Insured died on May 9, 2022. Emily Fitzgerald and Thomas Fitzgerald survived him. On August 25, 2022, Lydia Fitzgerald qualified in the Nelson County Circuit Court as administrator of the Estate.

26. As a result of the death of the Insured, life insurance benefits in the amount of $32,974.87, to which applicable interest will be added, are due under the Whole Life Policy (the "Whole Life Benefits"), and life insurance benefits in the amount of $250,000.00, to which applicable interest will be added, are due under the Term Life Policy (the "Term Life Benefits"). (The Whole Life Benefits and the Term Life Benefits are collectively referred to as the "Benefits").

27. As of July 1, 2007, Va. Code § 20-111.1 provided:

> A. Upon the entry of a decree of annulment or divorce from the bond of matrimony on and after July 1, 1993, any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent. The payor of any death benefit shall be discharged from all liability upon payment in accordance with the terms of the contract providing for the death benefit, unless the payor receives written notice of a revocation under this section prior to payment.
>
> B. The term "death benefit" includes any payments under a life insurance contract, annuity, retirement arrangement, compensation agreement or other contract designating a beneficiary of any right, property or money in the form of a death benefit.
>
> C. This section shall not apply (i) to the extent a decree of annulment or divorce from the bond of matrimony, or a written agreement of the parties provides for a

contrary result as to specific death benefits, or (ii) to any trust or any death benefit payable to or under any trust.

D. If this section is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under this section is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted.

28.     As of July 1, 2012, Va. Code § 20-111.1 provided

A. Except as otherwise provided under federal law or law of this Commonwealth, upon the entry of a decree of annulment or divorce from the bond of matrimony on and after July 1, 1993, any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent. The payor of any death benefit shall be discharged from all liability upon payment in accordance with the terms of the contract providing for the death benefit, unless the payor receives written notice of a revocation under this section prior to payment.

B. The term "death benefit" includes any payments under a life insurance contract, annuity, retirement arrangement, compensation agreement or other contract designating a beneficiary of any right, property or money in the form of a death benefit.

C. This section shall not apply (i) to the extent a decree of annulment or divorce from the bond of matrimony, or a written agreement of the parties provides for a contrary result as to specific death benefits, or (ii) to any trust or any death benefit payable to or under any trust.

D. If this section is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under this section is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted.

E. Every decree of annulment or divorce from the bond of matrimony entered on or after July 1, 2012, shall contain the following notice in conspicuous, bold print:

Beneficiary designations for any death benefit, as defined in subsection B of § 20-111.1 of the Code of Virginia, made payable to a former spouse may or may not be automatically revoked by operation of law upon the entry of a final decree of annulment or divorce. If a party intends to revoke any beneficiary designation made payable to a former spouse following the annulment or divorce, the party is

responsible for following any and all instructions to change such beneficiary designation given by the provider of the death benefit. Otherwise, existing beneficiary designations may remain in full force and effect after the entry of a final decree of annulment or divorce.

29. The Policies were owned by the Insured and they had revocable beneficiary designations. Thus, there are issues relating to Va. Code § 20-111.1 regarding what effect, if any, the Property Settlement Agreement, the Final Decree of Divorce, the Amended Property Settlement Agreement, and/or the Amended Final Decree of Divorce would have on such designations.

30. Alternatively, if the payment of premiums on the Policies made by checks drawn on account(s) apparently in the name of Fitzgerald Farms, LLC is an indication that one or both of the Policies were part of (1) a plan, fund or program, (2) established or maintained, (3) by an employer, (4) for the purpose of providing, through the purchase of insurance or otherwise, benefits in the event of death, (5) to participants or their beneficiaries, ERISA could apply. Presumably, Fitzgerald Farms, LLC would have information relevant to such a determination. If ERISA applies, it could affect the distribution of the life insurance benefits. *See*, *e.g.*, *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (ERISA preempts state statutes providing that the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce).

31. As noted above, Emily Fitzgerald is listed as the Primary Beneficiary on both Policies. Southern Farm Bureau has received from Emily Fitzgerald a Claimant's Statement seeking the payment of the Benefits under the Policies to her.

32. As noted above, Thomas Fitzgerald is listed as the Contingent Beneficiary on the Term Life Policy. Southern Farm Bureau has received a letter from Thomas Fitzgerald stating that he planned to pursue a claim for the Term Life Benefits.

33. As noted above, there was no Contingent Beneficiary listed on the Whole Life

Policy. Although Southern Farm Bureau has inquired about the position of the Estate regarding the Whole Life Benefits, Lydia Fitzgerald has not informed Southern Farm Bureau of such position.

34. Southern Farm Bureau has a real and reasonable fear of exposure to double liability regarding the Benefits payable under the Policies. Any claims and/or potential claims of the Defendants are or would be dependent upon or derived from common sources: the Policies. Other than to be reimbursed for its fees and costs in this interpleader action, Southern Farm Bureau neither has nor claims any interest in the Benefits payable under the Policies. Southern Farm Bureau requests the intervention of this Court is required to resolve this matter.

## The Relief Sought

WHEREFORE, Southern Farm Bureau respectfully requests that this Court:

1. Allow Southern Farm Bureau to deposit the Benefits payable under the Policies into the registry of this Court and this Court hold such funds in an interest bearing account;

2. Enter an Order restraining the Defendants from instituting or prosecuting any proceeding in any State or United States court affecting the Whole Life Policy, the Term Life Policy, the Benefits payable under the Policies, or the obligations involved in this interpleader action until further order of this Court;

3. Grant Southern Farm Bureau an award of its attorney's fees and interpleader costs and expenses from the interpleaded the Benefits payable under the Policies;

4. Discharge Southern Farm Bureau and its agents from further liability regarding the Benefits payable under the Policies as a result of the Insured's death, make the injunction described above permanent, and make all appropriate orders to enforce the judgment; and

5. Provide such further relief as this Court deems appropriate.

Respectfully submitted,

SOUTHERN FARM BUREAU LIFE
INSURANCE COMPANY

By Counsel

**/s/ E. Ford Stephens**
E. Ford Stephens
Virginia Bar Number 25959
Counsel for Plaintiff, Southern Farm Bureau Life
Insurance Company
Christian & Barton, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-4037
(804) 697-4100 - phone
(804) 697-6112 – fax
Email: estephens@cblaw.com